UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>    v.<br><br>JAVIER FRANCISCO REYES,<br><br>          Defendant.<br>_____/ | No. CR-12-0155 EMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT**<br><br>**(Docket No. 12)** |

Defendant Javier Francisco Reyes has filed a motion to dismiss his indictment for illegal reentry in violation of 18 U.S.C. § 1326. He contends that his prior deportation, a predicate to the § 1326 charge, was invalid. Specifically, he collaterally attacks his underlying removal proceeding on the ground that his due process rights were violated. Having considered the parties' briefing and oral argument and the record before this Court, and for the reasons set forth below, the Court **GRANTS** Defendant's motion to dismiss the indictment.

## I.    FACTUAL & PROCEDURAL BACKGROUND

The material facts are not disputed.[1] Defendant was born in Mexico. Mot. at 2, Docket No. 12. His father died when Defendant was four years old, and his mother's health problems made it impossible for her to support her family. *Id.* Defendant dropped out of school at age eight to provide supplemental financial support. *Id.* In 2001, at age 14, he entered the United States in order to earn money. Javier Reyes Decl. ¶ 1, Docket No. 12-1. Defendant has a number of U.S. citizen

---

[1] Except where stated herein, the government does not dispute the facts asserted in Defendant's motion or contained in his declaration.

relatives in and around Santa Rosa and San Jose. Mot. at 3. He has worked picking fruit since his arrival in this country. *Id*. Defendant is currently the sole financial support of his girlfriend and their baby son who was born in the United States on January 1, 2012, and is thus a U.S. citizen. Reyes Decl. ¶ 3. He does not have lawful immigration status in this country. Mot. at 3.

In February of 2009, Mr. Reyes was convicted of possessing a short-barreled shotgun in violation of California Penal Code section 12020(a)(1). Abstract of Judgment, Docket No. 16-1. He served a 16-month sentence in San Quentin State Prison following a guilty plea in Sonoma County Superior Court. Mot. at 2; Opp'n at 3, Docket No. 15.

While in San Quentin, Defendant came to the attention of the Department of Homeland Security ("DHS"), on September 17, 2009. Mot. at 3. After interviewing Defendant, Immigration Enforcement Official Agent Dedric Cutrer determined that Defendant would be "processed as [an] Administrative Removal …." Mot. at 2; Opp'n at 3. The Notice of Intent to Issue a Final Administrative Order ("Notice of Intent") alleged that Defendant was deportable because of his conviction for an aggravated felony under 8 U.S.C. § 1101(a)(43)(A). Mot. at 3. The Notice of Intent also indicated that as a result of his aggravated felony conviction, Defendant was subject to expedited removal from the United States without the benefit of a hearing before an immigration judge. *Id*. Finally, the Notice of Intent informed the defendant of his right to be represented by counsel and of the 14 day period in which to file a review of the order to a U.S. Circuit Court of Appeals. Opp'n at 3. DHS issued the Notice of Intent on September 11, 2009, and Defendant signed it on October 2, 2009. Mot. at 12. The Notice of Intent included a waiver of Defendant's right to contest his deportation and judicial review. *Id*. The Notice of Intent submitted in evidence is in English. Notice of Intent, Docket No. 12-3. The government asserts that the document was orally translated for Defendant prior to his signing it, while the Defendant states that it "does not even appear to have been translated for him." Opp'n at 3; Reply, Docket No. 21 at 3.

On October 9, 2009, Defendant was issued a Final Administrative Removal Order and removed from the United States to Mexico on the same day. Opp'n at 3; Mot. at 4. On January 25, 2012, Defendant came to the attention of DHS agents while at the Sonoma County Jail in Santa Rosa. Mot. at 3. A grand jury in the Northern District of California returned an indictment against

2

1  Defendant for illegal reentry based on his October 2, 2009 removal from the United States.
2  Indictment, Docket No. 1; Opp'n at 3. Defendant filed a motion to dismiss on July 18, 2012. The
3  government filed an opposition on August 8, 2012, to which Defendant replied on September 26,
4  2012. Docket Nos. 15, 21. After a hearing on the motion to dismiss before this Court on October 3,
5  2012, at the Court's invitation, both parties filed supplemental briefing. Docket Nos. 23-25.

## II.  DISCUSSION

### A.  Legal Standard

"A defendant charged with illegal reentry pursuant to 8 U.S.C. § 1326 has a due process right to bring a collateral attack challenging the validity of his underlying deportation order because it serves as a predicate element of his conviction." *United States v. Melendez-Castro*, 671 F. 3d 950, 953 (9th Cir. 2012) (citing *United States v. Ubaldo-Figueroa*, 364 F. 3d 1042, 1047 (9th Cir. 2004)). To succeed on such a collateral attack, a defendant must demonstrate: "(1) that he exhausted all administrative remedies available to him to appeal his removal order, (2) that the underlying removal proceedings at which the order was issued 'improperly deprived [him] of the opportunity for judicial review' and (3) that 'the entry of the order was fundamentally unfair.'" *United States v. Ortiz-Lopez*, 385 F. 3d 1202, 1203-4 (9th Cir. 2004) (per curiam) (quoting 8 U.S.C. § 1326(d)). "An underlying removal order is 'fundamentally unfair' if: (1)[a defendant's] due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *Ubaldo-Figueroa*, 364 F. 3d at 1048 (citation and quotations omitted).

### B.  Fundamental Unfairness

#### 1.  Due Process

Defendant argues that the underlying removal proceeding violated his due process rights. Specifically, he contends that the DHS officer made an erroneous determination that his predicate California offense was an aggravated felony, which resulted in an expedited removal that deprived him of his right to be informed of his potential eligibility for voluntary departure in lieu of removal under 8U.S.C. § 1229c(a). Mot. at 9. The government maintains that Defendant's conviction under California Penal Code section 12020(a)(1) for possession of a short-barreled shotgun does constitute an aggravated felony, rendering Defendant ineligible for both a hearing in front of an immigration

3

judge and voluntary departure. Opp'n at 2. Defendant contends that his conviction did not constitute an aggravated felony and that he was therefore entitled to seek voluntary departure. If Defendant's contention is correct, he was deprived of crucial process as described below.

When a non-citizen is alleged by the DHS to be removable, the default legal course is to first issue a Notice to Appear. 8 U.S.C. § 1229(a)(1). The respondent then has the opportunity to appear before an immigration judge ("IJ") for a removal hearing. *Id*. If the IJ finds that the respondent is removable, she has a mandatory duty to inform him of any apparent eligibility for relief. *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000) (internal citations omitted). This includes the right to request voluntary departure in lieu of removal. *United States v. Ortiz-Lopez*, 385 F.3d at 1204 (recognizing due process violation where IJ failed to inform respondent of eligibility for voluntary departure under 8 U.S.C. § 1229c(a)). "[W]here the record, fairly reviewed by an individual who is intimately familiar with the immigration laws – as IJs no doubt are – raises a reasonable possibility that the petitioner may be eligible for relief, the IJ must advise the alien of this possibility and give him the opportunity to develop the issue." *Moran-Enreque v. Immigration and Naturalization Service*, 884 F.2d 420, 423 (9th Cir. 1989). Failure of the IJ to advise alien as to eligibility for relief from deportation amounts to a denial of due process. *United States v. Ubaldo-Figueroa*, 364 F. 3d at 1048; *United States v. Gonzalez-Valerio*, 342 F. 3d 1051, 1054 (9th Cir. 2003) (internal citations omitted) ("[t]he duty of the IJ to inform an alien of his eligibility for relief is mandatory, and the failure to do so constitutes a violation of the alien's due process rights.").

In contrast, if an individual is not a lawful permanent resident and is guilty of an aggravated felony, he is subject to an expedited administrative process and is not afforded a removal hearing before an IJ and is not eligible for voluntary departure. 8 U.S.C. § 1228(b)(5).

Here, Defendant's predicate offense was determined to be an aggravated felony by an Immigration Enforcement Official. Mot. at 3. That finding subjected Defendant to expedited removal without a hearing before an IJ, and he thus was not informed of any potential for eligibility for relief from removal. *Id*.

An erroneous determination that his predicate offense was an aggravated felony would constitute a "defect[] in his underlying deportation proceeding" *(Ubaldo-Figueroa*, 364 F. 3d at 1048) and a due process rights violation. Accordingly, this Court turns to the pivotal question whether Defendant's underlying conviction is an aggravated felony as defined in the Immigration and Nationality Act.

The Notice of Intent alleged that Defendant was removable as an aggravated felon based on his prior conviction for a "crime of violence" under 8 U.S.C. § 1101(a)(43)(F). Mot. at 3. That statute defines an aggravated felony to include "a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(F). Section 16 in turn defines "crime of violence" as:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16.

In the instant case, Defendant was convicted of possession of a short-barreled shotgun under California Penal Code section 12020(a)(1) and sentenced to 16 months in state prison. Abstract of Judgment, Docket No. 16-1. The statute of conviction makes it a crime to "possess[] . . . any short-barreled shotgun." Cal. Pen. Code 12020(a)(1).[2] The government argues that this conviction constitutes a crime of violence, citing the Ninth Circuit's decision in *United States v. Dunn*, 946 F.2d 615, 620-21 (9th Cir. 1991).

*Dunn* held that a conviction for possession of an unregistered firearm under 26 U.S.C. § 5861(d) (making it unlawful "to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record") was a crime of violence under 16(b).[3] The

---

[2] It is undisputed by the parties that Defendant's 16-month state prison sentence for the predicate offense in question satisfies the term of imprisonment under § 16.

[3] At the time the defendant in *Dunn* was charged, § 16 still served as the controlling statute defining a crime of violence for the purposes of sentencing enhancements. Beginning in 1989, the Sentencing Guidelines adopted a distinct definition of a "crime of violence," codified in § 4B1.2.

court found that possession of an unregistered firearm under § 5861(d) constituted a crime of violence, because "possession of an unregistered firearm is presumptive evidence of unlawful violent intentions and, therefore, involves the substantial risk of violence necessary to label the possession a crime of violence under 16(b)." *Dunn*, 946 F.2d at 621.  In so holding, *Dunn* focused primarily on the 16(b) language emphasizing the requirement that a crime of violence involve conduct posing "substantial risk that physical force . . . may be used." *Id*.

The government argues that the same is true with the California crime of possessing a short-barreled shotgun.  Such a weapon has no legitimate use (such as hunting) and entails a substantial risk that it will be used to effect physical force and violence.  Under *Dunn*'s construction of § 16(b), according to the government, violations of 28 U.S.C. § 5861(d) and California Penal Code section 12020(a)(1) are materially indistinguishable.  Indeed, the government argues that a violation of section 12020(a)(1) implies a violation of § 5861(d), because conviction under 12020(a)(1) indicates that the firearm is unregistered on both the state *and* federal level, and § 5861(d) criminalizes the possession of a firearm such as a short-barreled shotgun "not registered ... in the National Firearms Registration and Transfer Record."  In particular, the "National Firearms Act mandates denial of any application for registration of a firearm the possession of which is illegal." *Hunter v. United States,* 73 F. 3d 260, 261 (9th Cir. 1976).  Unauthorized possession of a firearm under California law would bar federal registration. *See* 26 U.S.C.A. § 5822 ("[a]pplications shall be denied if the making or possession of the firearm would place the person making the firearm in violation of law."); 26 U.S.C.A. § 5812 ("[a]pplications shall be denied if the transfer, receipt, or possession of the firearm would place the transferee in violation of law.").  Hence, possession of an unregistered short-barreled shotgun in violation of California Penal Code § 12020(a)(1) would also constitute possession of an unregistered firearm in violation of § 5816(d).

Defendant contends that *Dunn* is distinguishable because section 12020(a)(1) and § 5861(d) are not categorically identical.  He contends that he could have complied with federal law (and not

---

*Dunn* analyzed § 16 for the purpose of applying the career offender provision of the Sentencing Guidelines.

6

violate § 5861(d)) without a California permit (in violation of § 12020(a)(1)).  However, as discussed above, such a result is not legally possible.

More fundamentally, Defendant urges this Court to find that *Dunn* is not controlling because it was effectively overruled by the Supreme Court's superceding decision in *Leocal v. Ashcroft.* 543 U.S. 1 (2004).  He argues that under *Leocal*, possession of a short-barreled shotgun is not a crime of violence under § 16(b).  For a prior case to be effectively overruled, the "the issues decided by the higher court need not be identical in order to be controlling.  Rather, the relevant court of last resort must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable."  *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003).  Hence, the issue in the present case is whether the reasoning of *Dunn* and *Leocal* are "clearly irreconcilable" such that *Dunn* has been effectively overruled, and *Leocal* instead controls.

In *Leocal*, the Supreme Court held that a DUI offense causing serious bodily injury is not categorically a crime of violence under § 16(b).[4]  *Leocal*, 543 U.S. at 11.  *Leocal* reasoned that 16(b) "covers offenses that naturally involve a person acting in disregard of the risk that physical force might be used against another in committing an offense."  *Id.* at 2 (emphasis added).  The Court further stated, "[t]he reckless disregard in § 16 relates not to the general conduct or to the possibility that harm will result from a person's conduct, but to the risk that the use of physical force against another might be *required in committing a crime*."  *Id*. (emphasis added).  With an emphasis on the language of § 16(b) – "in the course of committing the offense" – *Leocal* circumscribed the definition of a "crime of violence" to those crimes that entail the use of physical force "in committing a crime."  *Id*. at 11.  The Court gave, as a "classic example," burglary.  "A burglary would be covered under § 16(b) not because the offense can be committed in a generally reckless way or because someone may be injured, but because burglary, by its nature, involves a substantial risk that the burglar will use force against a victim *in completing the crime*."  *Leocal*, 543 U.S. at 10 (emphasis added).  While the precise issue in *Leocal* was whether there was a sufficient mens rea

---

[4] The specific statute addressed made it a third-degree felony to drive a vehicle while under the influence of alcohol and, "by reason of such operation, caus[e] . . . [s]erious bodily injury to another." Florida Stat. § 316.193(3)(c)(2).

7

supporting defendant's DUI conviction to constitute a crime of violence under § 16(b), its reasoning and interpretation of § 16(b) is clear: the risk of physical force central to the definition of a crime of violence under § 16(b) is the risk of its use "in the course of committing the offense" – its use in "completing the crime." *Id.* at 2, 10. Consistent with that emphasis, *Leocal* characterized "crimes of violence" as "violent, active crimes." *Leocal*, 543 U.S. at 10.

In contrast, *Dunn's* analysis did not address the language "in the course of committing the crime" contained in § 16(b) and emphasized by *Leocal*. Instead, *Dunn* focused on the nature of the weapons in question, finding them to be "inherently dangerous," and that their mere possession implies a "substantial risk of violence necessary to label the possession a crime of violence under 16(b)." *Dunn*, 946 F.2d at 621. This analysis ignores the requirement of a risk of physical force required be that used "in the course of *committing* the crime," as *Leocal* requires. 543 U.S. at 11 (emphasis added). *Dunn* is "clearly irreconcilable" with *Leocal*.

While the Ninth Circuit has not had occasion to revisit *Dunn* after *Leocal*, in *Covarrubias-Teposte v. Holder*, 632 F. 3d 1049 (2011), the circuit has embraced the reasoning of *Leocal* in defining a "crime of violence" under 16(b). *Covarrubias-Teposte* held that a conviction for shooting at an inhabited dwelling or vehicle under California Penal Code § 246 was *not* categorically a crime of violence. *Covarrubias-Teposte*, 632 F.3d at 1055. "In order to be a predicate offense under either § 16 approach, the underlying offense must require proof of an intentional use of force or a substantial risk that force will be intentionally used *during its commission*." *Id.* at 1053 (citing *United States v. Gomez-Leon*, 545 F. 3d 777 (9th Cir. 2008)) (emphasis added). *Covarrubias-Teposte* reasoned that: "[o]nce the initial shooting has occurred, an offender of § 246 has no further criminal purpose to accomplish through the use of intentional force." *Id.* at 1055. And it expressly rejected the government's argument that "reckless shooting . . . carries a substantial risk that intentional force *will be used not in the act of shooting but rather during the course of commission*, through some kind of escalating confrontation," finding that to be "too speculative to support a conclusion that CPC § 246 is categorically a crime of violence." *Id.* 1054 (emphasis added).

8

Other circuits have reached a result opposite of *Dunn*. In *United States v. Serafin*, 562 F. 3d 1105 (10th Cir. 2009), the Tenth Circuit conducted a comprehensive review of the case law construing § 16(b) in light of *Leocal*. Turning to *Leocal* for guidance in construing the language of § 924(c)(3)(B) (which mirrors the language in 16(b)),[5] *Serafin* held that the possession of a "short-barrel, disassembled shotgun, *without* a commensurate intent to use the weapon in the course of committing another crime, does not raise the statutorily required risk of force during the course of the possession" to make it a crime of violence under that section. *Serafin*, 562 F. 3d at 1107. It concluded that "to qualify as a crime of violence the offense must proscribe conduct which not only (1) naturally involves a disregard of a substantial risk of force against another, but also (2) where such risk of force arises during the course of committing the offense – a violent, active offense." *Id.* at 1108 (citing *Leocal* at 10-11). In so holding, *Serafin* distinguished the post-*Leocal* landscape from contrary cases decided before it, and specifically noted that *Dunn* had failed to account for "the statutory requirement that the risk arise *during* the course of committing the offense and instead focused more on the 'by its nature' language." *Id.* at 1113. It thus found *Dunn* "unpersuasive," given that "*Leocal* instructs us to focus not on whether possession will likely result in violence, but instead whether one possessing an unregistered weapon necessarily risks the need to employ force to commit possession." *Id.*

*Serafin* surveyed the findings of other circuits on this question. In *United States v. Hull*, 456 F 3d. 133, 140 (3rd Cir. 2006), the Third Circuit found that possession of a pipe bomb does not contain "a risk that physical force might be used against another to commit the offense of possession." It further found that "the relevant inquiry is not whether possession makes it more likely that a violent crime will be committed, but instead whether there is a risk that in committing the offense of possession, force will be used." *Id. Cf. Henry v. Bureau of Immigration and Customs*

---

[5] 18 U.S.C. § 924(c)(3)(B) reads: For purposes of this subsection the term "crime of violence" means an offense that is a felony and – (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

9

*Enforcement*, 493 F. 3d 303, 310 (3d Cir. 2007) (possession of a firearm with the intent to use it unlawfully against another is categorically a crime of violence under 16(b)).

In the Fifth Circuit, a pre-*Leocal* case established a framework consistent with *Leocal*. *United States v. Chapa-Garza,* 243 F. 3d 921, 927 (5th Cir. 2001) held that for a crime to be categorically one of violence under 16(b), it must present "the substantial likelihood that the offender will intentionally employ force against the person or property of another *in order to effectuate the commission of the offense.*" (Emphasis added). Adopting that framework, *United States v. Diaz-Diaz*, 327 F. 3d 410, 414 (5th Cir. 2003) held that possession of a short-barreled firearm is not a 16(b) crime of violence. *Diaz-Diaz* also recognized that *United States v. Rivas-Palacios*, 244 F.3d 396, 398 (5th Cir.2001), which found that possession of a sawed-off shotgun *was* a crime of violence under 16(b), "failed to apply [the *Chapa-Garza*] framework," and thus did "not preclude [the] holding that possession of a short-barrel firearm is not a § 16(b) "crime of violence." *Id*. Thus, *Rivas-Palacios*, cited by the government in the case at bar, has been effectively overruled.

Under *Leocal*, possession of a short-barreled rifle is not a crime of violence under 18 U.S.C. § 16(b). Conviction under California Penal Code section 12020(a)(1) only requires possession, not use, of the prohibited firearm. Unlike the crime of burglary which entails "the risk of having to use [] force in *committing a crime*," *Leocal*, 543 U.S. at 11 (emphasis added), possession under California Penal Code § 12020(a)(1) is completed once an individual has merely taken the unlawful weapon into possession. No use of force is necessary to complete that crime.

In an attempt to distinguish *Leocal*, the government argues that the "presumptive evidence of violent intentions" evidenced by the mere possession of a short-barreled shotgun is fundamentally different from the possession of a car involved in *Leocal*: "the possession of a car has no such presumptions, while a short-barreled . . . shotgun is more akin to an ultra-hazardous object, that is incapable of safe *use*, regardless of what precautions are taken." Govt's Opp'n at 3, Docket No. 25 (emphasis added). The government's reliance on the possible "use" of the weapon is instructive. While this Court does not seek to minimize the criminal nature of possession of such a weapon as a short-barreled shotgun, there is a key difference under the reasoning of *Leocal* between use and

10

possession. *Cf. People v. Rubalcava*, 23 Cal. 4th 322, 334 (2000) (noting that a "defendant's intended use of the instrument is neither an element of the offense a nor a defense" under California section 12020(a).). Under *Leocal*, possession alone is not enough to constitute a crime of violence under 18 U.S.C. § 16(b). Indeed, if shooting an inhabited dwelling or car is not a crime of violence under § 16(b) under *Covarrubias-Teposte*, it is difficult to conclude that the possession (not use) of a short-barreled shotgun is.

The government's citations to Ninth Circuit cases finding that possession of an illegal firearm is a crime of violence under § 4B1.2(a)(2) of the Sentencing Guidelines[6] are inapposite to the instant case. The particular language of 16(b) relied on by *Leocal* and ignored in *Dunn* which requires a substantial risk of physical force be used "in the course of committing the offense" is absent from the definition of a "crime of violence" under § 4B1.2(a)(2) of the Sentencing Guidelines. Section 4B1.2(a)(2) defines a "crime of violence" as, in pertinent part, a crime that "involves conduct that presents a serious potential risk of physical injury to another." Importantly, *Leocal* expressly distinguished the definition of crime of violence under 16(b) with that contained in the Sentencing Guidelines:

> "The "substantial risk" in § 16(b) relates to the use of force, not to the possible effect of a person's conduct." Compare § 16(b) (requiring a "substantial risk that physical force against the person or property of another may be used") with the United States Sentencing Commission, Guidelines Manual § 4B1.2(a)(2) (Nov.2003) (in the context of a career-offender sentencing enhancement, defining "crime of violence" as meaning, inter alia, "conduct that presents a serious potential risk of physical injury to another").

*Leocal*, 543 U.S. at 10 n.7. As noted in *Serafin*, 562 F.3d at 1109, "the Supreme Court has found that the definition of a crime of violence under § 16(b) is narrower than that in USSG § 4B1.2." *See also Chapa-Garza* at 926-27 (noting "the material difference in scope between [ § 16(b)] and guideline 4B1.2(a)(2)"). *Serafin* relied on that distinction when it distinguished *United States v.*

---

[6] *See United States v. Hayes*, 7 F. 3d 144, 145 (9th Cir. 1993) (finding 28 U.S.C. § 5861(d) conviction for possession of an unregistered sawed-off shotgun to be a crime of violence under the Sentencing Guidelines); *see also United States v. Delaney*, 427 F. 3d 1224, 1226 (9th Cir. 2005) (holding that a conviction under Cal. Penal Code 12020(a)(1) to be a crime of violence for the purposes of the career enhancement provision of the Sentencing Guidelines).

11

*Dwyer*, 245 F. 3d 1168, 1172 (10th Cir. 2001), which held the same crime as in *Serafin* to be a crime of violence under § 4B1.2(a)(2) of the Sentencing Guidelines. "While superficially similar, as pointed out by the Supreme Court in *Leocal*, crucially absent from the text of § 4B1.2 is that the risk of violence must arise *during the course of committing an offense*." *Serafin*, 562 F.3d at 1110 (emphasis added).

In sum, the Court finds that *Dunn* has been effectively overruled by *Leocal* and that *Leocal*, not *Dunn*, controls. Under § 16(b) as interpreted by *Leocal*, Defendant's predicate offense of possession of a short-barreled shotgun is not a crime of violence within the meaning of 18 U.S.C. § 16(b). Defendant was therefore not convicted of an aggravated felony under 8 U.S.C. § 1101(a)(43)(F), and his expedited removal and the denial of a hearing before an IJ (and the rights and advisement he should have received) was in error. The failure to provide Defendant an opportunity to be heard by an IJ and to be informed of his eligibility for voluntary departure denied him his due process rights. The first prong of the "fundamental" unfairness test under *United States v. Ortiz-Lopez*, *supra*, is thus satisfied.

2. <u>Prejudice</u>

In addition to finding a due process violation, to prevail on a collateral challenge of a § 1326 indictment Defendant must demonstrate prejudice arising from the constitutional deficiency. *United States v. Pallares-Galan*, 359 F. 3d 1088, 1095 (9th Cir. 2004). To show prejudice, Defendant "does not have to show that he actually would have been granted relief. Instead, he must only show that he had a 'plausible' ground for relief from deportation." *See Ubaldo-Figueroa*, 364 F. 2d at 1050 (quoting *United States v. Arrieta*, 224 F. 3d at 1079).

Here, Defendant has adequately demonstrated that, absent the due process violation, he would have had a plausible grounds for being granted voluntary departure by an IJ. He was statutorily eligible for "prehearing" voluntary departure under 8 U.S.C.A. § 1229c(a)(1), which allows that

> [t]he Attorney General may permit an alien voluntarily to depart the United States at the alien's own expense . . . in lieu of being subject to proceedings under section 1229a of this title or prior to the completion of such proceedings, if the alien is not deportable under section

1227(a)(2)(A)(iii) [conviction of an aggravated felony] or section
                    1227(a)(4)(B) [conviction for a terrorism-related crime].

8 U.S.C.A. § 1229c(a)(1). To demonstrate threshold eligibility for voluntary departure, an individual must meet the elements listed in § 1229c(a)(1): that he has not been found removable because of a conviction for an aggravated felony or a terrorism-related crime, that he was not previously granted voluntary departure under 8 U.S.C. § 1182(a)(6)(A), and that he be able to pay his passage home. It appears undisputed that Defendant has not previously been granted voluntary departure. As discussed above, his conviction under Cal. Pen. Code § 12020(a)(1) did not constitute an aggravated felony, and there is no allegation that it was a terrorism-related crime. Finally, he asserts that, had he known of his eligibility for this form of relief, he could have "obtained money from . . . family members" to fund his passage to Mexico. Reyes Decl. ¶ 4. We find that he meets the statutory requirements for voluntary departure.

       After finding statutory eligibility, the IJ grants voluntary departure on a discretionary basis. *Matter of Gamboa*, 14 I. & N. Dec. 244, 248 (BIA 1972) (noting that "[t]he mere fact that an alien may be eligible for some form of discretionary relief does not mean that he must be granted that relief; discretion must still be exercised."). In "a voluntary departure application...[d]iscretion may be favorably exercised in the face of adverse factors where there are compensating elements such as long residence here, close family ties in the United States, or humanitarian needs." *Id*. The government argues that Defendant's criminal history and the facts surrounding his predicate conviction would have made his claim for voluntary departure implausible. The Court finds that the case law from this Circuit suggests the opposite. The record before this Court reveals that Defendant's criminal history consists only of the predicate conviction for possession of a short-barrel shotgun. This criminal record is not one so extensive as to preclude a plausible claim for a discretionary grant of voluntary departure. *See United States v. Vasallo-Martinez*, 360 Fed.Appx. 731, 732 (9th Cir. 2009) (granting dismissal of a § 1326 in light of the fact that "[t]he district court [had] erroneously focused *exclusively* on [the defendant's] four convictions for Driving Under the Influence and three unrelated misdemeanors in analyzing plausibility;" also noting a series of BIA cases granting voluntary departure despite individual's criminal history).

13

Further, with respect to "compensating elements such as long residence here, close family ties in the United States, or humanitarian needs" considered in granting voluntary departure, *Matter of Gamboa*, 14 I. & N. Dec. at 248, the Court notes that Defendant has a long work history in this country and was providing sole support to his girlfriend and their child. Mot. at 3. He has numerous relatives in northern California, including United States citizens. Reyes Decl. ¶ 2. The Court credits the content of the declaration submitted by Defendant, in which a licensed immigration law practitioner attests that Defendant "likely" would have been granted voluntary departure. Angela M. Bean Decl. ¶ 13, Docket No. 21-1. ("[H]ad Mr. Reyes been in front of an immigration judge he would likely have been granted relief in the form of a pre-hearing voluntary departure."). That evidence states that "denials of pre-hearing voluntary departure . . . based on purely negative discretionary factors unrelated to compliance is rare, and [are] almost always . . . based on much more severe negative equities such as several serious criminal convictions or incidences of immigration fraud." *Id.*

The Court therefore finds that Defendant had a "plausible ground for relief from deportation," (*Ubaldo-Figueroa*, 364 F.3d at 1050) and was prejudiced by the defects underlying his deportation proceedings.

C.    <u>Exhaustion of Administrative Remedies and Denial of Judicial Review</u>

To prevail on a collateral attack of a § 1326 charge, Defendant must also show "that he exhausted all administrative remedies available to him to appeal his removal order," and "that the underlying removal proceedings at which the order was issued 'improperly deprived [him] of the opportunity for judicial review.'" *United States v. Ortiz-Lopez*, 385 F.3d at 1203-4. The government's argument that Defendant failed to exhaust his administrative remedies is predicated solely on its assertion that his underlying conviction is for an aggravated felony, which would have legitimately barred him from any discretionary form of relief. Given this Court's finding that the aggravated felony determination was not correct and constituted a denial of due process, the government's argument is meritless.

"The exhaustion requirement . . . cannot bar collateral review of a deportation proceeding when the waiver of right to an administrative appeal did not comport with due process. A waiver of

14

the right to appeal a removal order does not comport with due process when it is not considered and intelligent." *Ubaldo-Figueroa*, 364 F. 3d at 1048 (internal citations and quotations omitted). "A waiver is not 'considered and intelligent' when 'the record contains an inference that the petitioner is eligible for relief from deportation,' but the Immigration Judge fails to 'advise the alien of this possibility and give him the opportunity to develop the issue.'" *United States v. Castaneda-Barajas*, CR-11-2069-RMP, 2011 WL 3626786, at *3 (E.D. Wash. Aug. 16, 2011) (quoting *United States v. Muro-Inclan*, 249 F.3d 1180, 1184 (9th Cir. 2001)).

Here, because of the incorrect determination that Defendant was ineligible for voluntary departure, Defendant was not informed of his actual eligibility for voluntary departure. After receiving the Notice of Intent to Issue a Final Administrative Removal Order, he signed a waiver of his right to contest his deportation and to judicial review based on the erroneous belief in his lack of alternative options. Because his waiver of rights "did not comport with due process" (*Ubaldo-Figueroa* at 1048), he is not barred by the administrative exhaustion requirement under § 1326.

Further, "[i]n a criminal prosecution under § 1326, the Due Process Clause of the Fifth Amendment requires a meaningful opportunity for judicial review of the underlying deportation." *United States v. Zarate-Martinez*, 133 F.3d 1194, 1197 (9th Cir.1998). In *Ubaldo-Figueroa*, the court found that the defendant's waiver of right to judicial review was invalid, as it had been based on the IJ's failure to apprise the defendant of his rights. *Ubaldo-Figueroa*, 364 F.3d at 1050. Here, Defendant's lack of a "considered and intelligent" waiver of rights to judicial review similarly deprived him of the opportunity for judicial review. He thus meets the third prong of the test laid out in *United States v. Ortiz-Lopez*.

///
///
///
///
///
///
///

### III. CONCLUSION

For the aforementioned reasons, this Court finds that the Defendant has demonstrated that his underlying proceedings were fundamentally unfair; his due process rights were violated, and that he suffered prejudice thereby. *See United States v. Ortiz-Lopez*, 385 F.3d at 1203-4. The Court further concludes that Defendant has satisfied each of the elements mandated by § 1326(d) to collaterally attack his deportation. Defendant's motion to dismiss the indictment is therefore **GRANTED**.

This order disposes of Docket No. 12.

IT IS SO ORDERED.

Dated: November 2, 2012

_____
EDWARD M. CHEN
United States District Judge